244 A.2d 585.

STATE *vs.* ANTHONY LEMME.

AUGUST 2. 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J.   The defendant was convicted in the eighth judicial district court on a charge of failing to comply with

the provisions of G. L. 1956, §31-26-4.[1]  Seasonably appealing to the superior court, he demurred to the complaint as being vague, indefinite and ultra vires of the legislative police power, allegedly violating arts. V and XIV of amendments to the United States constitution, and art. I, sec. 10, of the state constitution.  Additionally, he filed a plea in abatement which, in substance, sought a judicial determination that the statute in question was violative of arts. V and VI of amendments to the United States constitution and art. I, sec. 13, of the Rhode Island constitution.  The state filed a replication and on September 14, 1962, a hearing was held before a superior court justice who overruled defendant's demurrer and plea in abatement.  Significantly, defendant apparently took no exception.

In any event, the case was tried to a jury in November 1964, more than two years after defendant's demurrer and plea in abatement were overruled.  At the trial, evidence was adduced by the state, which, if believed, would warrant the jury in finding defendant guilty as charged.  After the state had rested, defendant moved to dismiss, and when that motion was denied, moved for a directed verdict.

This latter motion, however, was not predicated on the orthodox ground that, viewed in the light most favorable to the state, there was no evidence nor reasonable inference to be drawn therefrom, competent to support a finding of

---

[1]"Duty on collision with unattended vehicle.—The driver of any vehicle which collides with another vehicle which is unattended and damage results to either vehicle shall immediately stop and shall then and there either locate and notify the operator or owner of the unattended vehicle of the name and address of the driver and owner of the vehicle striking the unattended vehicle or shall leave in a conspicuous place in or upon the unattended vehicle a notice written in the English language giving the name and address of the driver and of the owner of the vehicle doing the striking and a statement of the circumstances of the collision, and shall immediately give notice of such accident to a nearby office of local or state police. In the event the office so notified does not have jurisdiction of the locale of the accident, it shall be the duty of the officer receiving such notice to immediately give notice of such accident to the office having jurisdiction."

guilt. Rather, defendant sought a direction to acquit on substantially the constitutional grounds raised by his demurrer and plea in abatement. In arguing his motion for a directed verdict, defendant inexplicably made no reference to either his demurrer, plea in abatement, or the September 14, 1962 ruling on those pleas.

The trial justice denied defendant's motion and submitted the case to the jury which returned a verdict of guilty. From that verdict, defendant duly prosecuted a bill of exceptions, his sole exception being that taken to the denial of his motion for a directed verdict.

In support thereof he argued that both the complaint and the statute were invalid for the same constitutional grounds advanced before the trial justice, and that the trial justice misconceived the reasoning of this court in *State* v. *Smith,* 29 R. I. 513, 72 Atl. 710. Because it requires limited comment this latter contention is first to command our attention.

In *State* v. *Smith, supra,* the defendant was charged with a violation of P. L. 1908, chap. 1592, sec. 12. It provided in pertinent part:

> "Every driver of a motor vehicle, after knowingly causing an accident by collision or otherwise, or knowingly injuring any person, horse, or vehicle, shall forthwith bring his motor vehicle to a full stop, return to the scene of the accident, and give to any proper person, demanding the same, the number of his driver's license, the registration number of the motor vehicle, and the names and residences of each and every male occupant of said motor vehicle."

Referring to the legislative purpose the quoted section sought to serve, this court in *Smith* stated at 523 and 72 Atl. at 715, "The important duty is to return to the scene of the accident, not out of motives of humanity for the purpose of rendering first aid to the injured, but to give information *if required.*" (italics ours) Stressing that P. L. 1908, chap. 1592, sec. 12, and §31-26-4 evince the common

purpose of prohibiting a motorist from leaving the scene after a collision, defendant in the instant case urges that the reasoning of this court in *Smith* applies with equal force to the circumstances of the case at bar. Specifically, he argues that giving information, *if required,* and not humanitarian concern, motivated the general assembly to enact §31-26-4, and the evidence clearly establishes no possibility of a demand for information. An analytical reading of the two statutes effectively disposes of defendant's first contention. Public Laws 1908, chap. 1592, sec. 12, was clearly designed to provide pertinent information regarding the ownership and operation of a striking vehicle to the owner and/or occupants of a vehicle struck should these latter demand such information. General Laws 1956, §31-26-4, on the other hand, is designed to provide a measure of similar information for the owner and/or operator of an unattended motor vehicle, hence covering a situation where there would be no one to make demand.

We turn then to an admittedly more complicated, if not more troublesome question, namely, the alleged unconstitutionality of §31-26-4 in the first instance and the resulting invalidity of the complaint. The complication arises principally out of the state's contention that a motion for a directed verdict tests only the competency of the evidence adduced in support of the offense charged and cannot be used, as the instant defendant would use it, to challenge the statute on constitutional grounds. Assuming without deciding that in an appropriate case such contention has validity, the circumstances of the instant case are such that serious inquiry would serve no useful purpose.

Here, the record establishes that in furtherance of his appeal from the district court, defendant, prior to trial in the superior court, filed a demurrer and plea in abatement setting forth with particularity and clarity those provisions of the federal and state constitutions which, he alleged, ren-

dered §31-26-4 nugatory. As heretofore observed, these pleadings were overruled by a superior court justice some 26 months before the case went to trial.

Prior to the enactment of P. L. 1940, chap. 941,[2] the superior court lacked jurisdiction to pass on the constitutionality of an act of the legislature. *Allen* v. *R. I. State Bd. of Veterinarians,* 72 R. I. 372, 52 A.2d 131.

With the enactment of said P. L. 1940, chap. 941, however, justices of the superior court were vested with jurisdiction to either rule on pleadings raising constitutional questions or certify such question to this court. If, exercising such discretion, they consider the questions raised by the pleadings and rule thereon adversely to the defendant in a criminal case, such ruling becomes the law of the case for the purposes of trial and is subject to review in this court by way of exception. *Allen, supra,* and see *State* v. *Paradis,* 66 R. I. 152, 18 A.2d 342.

Here, defendant failed to take and preserve exceptions to the rulings on his demurrer and plea in abatement, and, under our practice, such failure would preclude appellate review of those rulings, since the taking of exceptions is

---

[2]"Certification of cases to the supreme court.—Whenever in any proceedings, civil or criminal, in the superior court or in any district court, prior to the trial thereof on its merits, or upon a motion in arrest of judgment, any question of law shall arise, or the constitutionality of an act of the general assembly shall be brought in question upon the record, which in the opinion of the court, or in the opinion of the attorney-general, if the state be a party to such proceeding, is of such doubt and importance, and so affects the merits of the controversy that it ought to be determined by the supreme court before further proceedings, the court in which the cause is pending shall certify such question or motion to the supreme court for that purpose and stay all further proceedings until the question is heard and determined: *Provided,* that no question shall be so certified in any criminal case where the defendant has not been released on bail."

mandatory procedure.[3]   However, in *Fay* v. *Noia,* 372 U. S. 391, 83 S. Ct. 822, 9 L. Ed. 2d 837, the United States Supreme Court made it clear that the question of whether failure to adhere to state procedures operates to deprive a defendant of federal constitutional rights is a federal question to be determined in the last analysis by that court.  Recognizing the significance of that declaration vis-à-vis procedure in this state, we have, since *Fay* v. *Noia, supra, Henry* v. *Mississippi,* 379 U. S. 443, 85 S. Ct. 564, 13 L. Ed. 2d 408, and the cases that followed, been constrained to pretermit our procedural rules in several cases when it was clear that requiring adherence to those rules would operate to deny a defendant rights guaranteed by the federal constitution, when a defendant's failure to adhere to such rules was not a ploy suggested by trial strategy.  See *State* v. *Leavitt,* 103 R. I. 273, 237 A.2d 309, *State* v. *Quattrocchi,* 103 R. I. 115, 235 A. 2d 99, and other cases.

Here, although the taking and preserving of exceptions to rulings prior to trial serve a substantial state interest, it seems clear that defendant's failure to take and preserve exceptions to the trial justice's rulings on his special pleas, was not prompted by trial strategy.  Accordingly, to the extent that they relate to alleged deprivations of federal rights, we shall consider the instant defendant's contention made in connection with his exception to the denial of his motion for a directed verdict as though such exception had been taken to the superior court justice's rulings on defendant's demurrer and plea in abatement.

The defendant's first such contention goes to the sufficiency of the complaint.  He argues that it is vague, indefinite and, in violation of arts. VI and XIV of amendments

---

[3]Decisions of this court to the effect that alleged error is brought on the records for review by way of a bill of exceptions are reported in numerous cases.  Among them are: *State* v. *Brown,* 40 R. I. 527, 102 A. 65; *State* v. *Amaral,* 47 R. I. 245, 132 A. 547; *State* v. *Braica,* 78 R. I. 32, 78 A.2d 374; and *State* v. *Werner,* 87 R. I. 314, 140 A.2d 502.

to the federal constitution, seeks to deprive him of liberty or property for conduct, not within the prohibiting police power of the state. This is so, he argues, because the word "knowingly" has been omitted, thus making it an offense for failure to comply with the statute even though a motorist were not aware that he had collided with an unattended vehicle.

There would be merit in this contention if the legislature did indeed intend the result for which defendant argues. Obviously, however, knowledge is so essentially an element of the offense as to be necessarily implied if not expressed. *People* v. *Bowlin,* 19 Cal. App. 2d 397, 65 P.2d 840. Not to do so in connection with the obligations imposed on a motorist under §31-26-4 (see footnote 1) would result in attributing an absurdity to the clear legislative intent, a result we have heretofore refused to consider. *State* v. *Haggerty,* 89 R. I. 158, 151 A.2d 382. It is well settled with us that where one construction of an act of the legislature operates to defeat an otherwise legitimate legislative intendment while another serves to support it, this court will adopt such latter construction. *State* v. *Milne,* 95 R. I. 315, 187 A.2d 136.

We note parenthetically that the trial justice, in passing on defendant's motion for a directed verdict, recognized that knowledge was essential even though not expressed in the statute. In denying defendant's motion, the trial justice pointed to the evidence from which such knowledge could be validly inferred by the jury. We hold, therefore, that defendant's first contention lacks merit.

There remains to be considered defendant's further contention that the duties imposed on a motorist by the terms of the statute run counter to the protection against self-incrimination guaranteed by the fifth article of amendments to the United States constitution. He argues first, that the duty to leave a written explanation in the English lan-

guage of "* * * a statement of the circumstances of the collision * * *" requires a motorist colliding with an unattended vehicle to reduce to writing admissions of guilt which could form the basis of prosecution for some other offense under the motor vehicle code act. We do not perceive that the required statement calls for information so detailed as to suggest, let alone admit, that the collision was the result of conduct amounting to a misdemeanor. Rather, we believe, and so hold, that the requirements of a statute are met by leaving a statement written in the English language which acknowledges participation in the collision, together with the names and addresses of the driver and the owner of the colliding vehicle. With its use of the phrase "circumstances of the collision," the legislature was suggesting to the colliding operator such additional information as to him might seem pertinent. It could not and did not intend to require criminal self-incrimination.

The defendant's second argument relative to self-incrimination involves that provision of the statute which requires a motorist colliding with an unattended vehicle to "* * * immediately give notice of such accident to a nearby office of local or state police." This objection is predicated on the proposition that the colliding operator might, at the time of the collision, have been operating without a license, or under such other circumstances as would have amounted to conduct punishable as a misdemeanor. Any prosecution for such conduct, he argues, which resulted from so informing the nearest police office, would be the product of self-incrimination. Thus, he reasons, requiring such a report, violates the immunity guaranteed by the fifth article of amendments.

The difficulty with this argument is that defendant does not claim that to have complied with the statute would have resulted in self-incrimination for him. See *People* v. *Limon*, 60 Cal. Rptr. 448, 252 Cal. App. 2d 626.

Rather, what he asks is, in effect, that this court should declare that, under circumstances not shown to be applicable to him, some aspects of §31-26-4 might be repugnant to federal guarantees against self-incrimination. It is elementary that one who seeks judicial veto of an act of the legislature on constitutional grounds has the burden of establishing that the provisions complained of are unconstitutional as to him. *King* v. *Williamson,* 103 R. I. 640, 240 A. 2d 408.

Furthermore, §31-26-4 imposes the dual requirements of leaving a written statement as aforesaid and reporting the accident to the nearest office of the local or state police. Failure to comply with either is a circumstance sufficient to support conviction and since the instant defendant failed to leave a statement as required, faulting the legislature on the issue of required reporting would avail him nothing. *Penniman's Case,* 103 U. S. 714, 26 L. Ed. 602 affirming 11 R. I. 333. *King, supra.*

We hold, therefore, that the defendant's exception should be overruled on all grounds raised and considered. The case is accordingly remitted to the superior court for further proceedings.

*Herbert F. DeSimone,* Attorney General, *Luc R. La-Brosse,* Special Assistant Attorney General, for complainant.

*Charles J. Rogers, Jr., Robert G. Pariseault,* for defendant.