THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SILAS WALKER, Defendant-Appellant.

(No. 58554;

First District (4th Division)—March 13, 1974.

Edward M. Genson and Sam Adam, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Roger Horwitz, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from a judgment entered by the Circuit Court of Cook County. After a bench trial the defendant was convicted of reckless homicide and leaving the scene of an accident. He was sentenced to a term of from 1 to 2 years on each charge, the charge, the sentences to run concurrently.

The issues presented on appeal are (1) whether the defendant was properly informed of his constitutional rights and knowingly and intelligently waived said rights; (2) whether the defendant was proven guilty beyond a reasonable doubt; (3) whether the indictment for the offense of leaving the scene of an accident was defective for failure to allege a mental state; and (4) whether Illinois Revised Statutes 1969, chapter 95½, §§ 11—401(b) and (d) and 11—403, violate the defendant's constitutional right against self-incrimination.

At the trial of this cause, Mr. Ray Joiner testified that on November 28, 1969, he was walking east on Marquette Road toward Aberdeen on the north side of the street when, from a distance of 75 to 100 feet, he heard a noise that sounded like a collision. At this moment the witness

looked up and saw an automobile leave the curb and return to the street. The witness observed the car travel 15 feet and again drive on the curb and return to the street. The car then traveled another 20 feet when it again went onto the curb and struck a tree. The driver of the car slumped over the wheel for a few seconds, restarted the car, and continued west on Marquette in a zigzag pattern. The witness then looked down and saw the victim, Mr. Willie Johnson, lying on the street. The witness once again observed the automobile, which made a U-turn and came back east on Marquette toward Aberdeen. The witness hailed the driver to stop, but the car drove on with the driver slumped behind the wheel.

Police Officer Robert Janus testified he was flagged down by Mr. Joiner. The officer observed skid marks and scuff marks on the curb and street. He also found a metallic ring lying in the street next to the curb, which appeared to have been broken off something.

Police Officer Edward Arnswald of the hit-and-run division testified he and fellow officers conducted a search for the hit-and-run car. Officer Arnswald subsequently spotted a car parked along the street two blocks from Aberdeen and Marquette which fit the description of the hit-and-run car. The left rear tail lens was missing from the car; there was an indentation on the hood and roof; and the hood ornament on the right front side was broken and had some cloth wrapped around it. Officer Arnswald compared the metal ring located on the left side of the car with the ring found at the scene of the hit-and-run, and testified they were the same size. The cloth found on the right front side of the car and the jacket worn by the victim at the time he was killed were sent to the police crime lab. The lab report concluded the fabric from the car and the victim's coat were from the same weave fabric.

The defendant was arrested in a tavern on December 3, 1969. He was taken to the hit-and-run police offices where Officer Arnswald warned the defendant "he didn't have to answer any question about an accident and that if he did say anything about the accident, he had a right to an attorney, that if he did say anything, it could be used against him at some future criminal proceeding." Officer Arnswald further advised the defendant he should obtain the advice of an attorney, and if he did not have enough money to obtain one, the State would provide an attorney for him. The defendant indicated he understood his rights. At trial counsel for the defendant objected to Officer Arnswald's testimony on the ground the defendant did not know or comprehend the nature of the officer's warning, and did not knowingly waive his rights under *Miranda*. The objection was overruled by the court. Officer Arnswald then testified further the defendant stated he was on Halsted at 69th Street on Novem-

ber 28, 1969; when he heard a "thump" on his car. He got out, saw no damage, and drove on. The defendant denied he was at Aberdeen and Marquette.

At the conclusion of the trial, the defendant was found guilty of reckless homicide and leaving the scene of an accident. He was sentenced to concurrent terms of from 1 to 2 years in the Illinois State Penitentiary.

The defendant first contends his oral and written statements to the police were obtained absent constitutionally required warnings and absent a valid and knowing waiver of said rights. The defendant relies primarily on the decision in *Miranda v. Arizona* (1966), 384 U.S. 436, wherein the Supreme Court held that when an individual is taken into custody or otherwise deprived of his freedom, "he must be warned prior to any questioning that he has a right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." The defendant argues the warnings given him in the instant case were devoid of any mention of defendant's right to have an attorney present at the interrogation, and thus were insufficient to satisfy the *Miranda* requirements. The defendant further contends he did not knowingly and intelligently waive his rights under *Miranda*. Defendant argues that at the time of his arrest he was intoxicated and did not comprehend the nature of the warning given him by the police. He cites the decision in *People v. Roy* (1971), 49 Ill.2d 113, wherein the Illinois Supreme Court held where arresting officers related the defendant appeared intoxicated and was unsteady following arrest, the defendant's statements were inadmissible since it was not shown the defendant had knowingly waived his right to counsel and right to remain silent.

■■■ We believe the defendant was properly informed of his constitutional rights and knowingly and intelligently waived said rights. The warning by Officer Arnswald that the defendant should obtain the advice of an attorney was given immediately after the officer told the defendant that if he said anything it could be used against him at some future criminal proceeding. These warnings clearly conveyed the idea to the defendant that he had a right to an attorney present during interrogation. The officer did not have to warn the defendant of this right with the included phrase "present during interrogation," because the law does not require specific words to be repeated every time to an arrested person in order to comply with *Miranda*. In *People v. Townsend* (1972), 6 Ill.App.3d 873, 877, this court held:

"The words of *Miranda*, however, do not constitute a ritualistic

formula which must be uttered without deviation to be effective. Rather words which convey the substance of the warnings and the required information are sufficient."

After being advised of his rights, the defendant was asked if he understood the warnings. He answered he did understand, and then elected to volunteer statements to the police. Officer Arnswald testified that based on his conversation and observation of the defendant, it was his opinion the defendant was sober at the time the statements were made. In *People v. Noonan* (1972), 5 Ill.App.3d 1109, 1111, the defendant contended he was intoxicated at the time of his interrogation, but the interrogation officers testified the defendant was sober. In affirming the defendant's conviction, the appellate court stated:

"The warnings given the defendant complied with the constitutional requirements set out in *Miranda v. Arizona* (1967), 384 U.S. 436. Whether he understood and waived them was a factual question, the answer to which depended upon the acceptance or rejection of defendant's testimony or that of the police officers. The credibility and weight to be given to the testimony of witnesses is a matter to be determined by the trial judge. His determination will not be reversed unless it appears to be palpably erroneous."

In the instant case, the defendant fully understood his rights and knowingly waived them when he volunteered statements to the police. He cannot now claim he was denied his constitutional rights.

The defendant next contends he was not proven guilty beyond a reasonable doubt. Defendant argues the State's case against him rests on a weak chain of inferences which do not support a conviction or prove the defendant guilty beyond a reasonable doubt.

■■ We believe the defendant was proven guilty beyond a reasonable doubt of reckless homicide and leaving the scene of an accident. It is a well settled principle of law that a conviction may be sustained on circumstantial evidence. (*People v. Huff* (1963), 29 Ill.2d 315.) In *People v. Marino* (1970), 44 Ill.2d 562, the Illinois Supreme Court stated:

"* * * a conviction may be sustained upon circumstantial evidence as well as direct evidence [citation], it being necessary only that the proof of circumstances must be of a conclusive nature and tendency leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime. [Citation.]"

In the instant case, the chain of events established beyond a reasonable doubt the defendant recklessly drove his automobile, struck and caused

the death of a pedestrian, and did not stop or report the accident within 48 hours. The trial judge's decision should therefore not be disturbed. *People v. Johnson* (1969), 114 Ill.App.2d 415.

The defendant's third contention is the indictment for the offense of leaving the scene of an accident in violation of Illinois Revised Statutes 1969, chapter 95½, § 11—401, is defective for failure to allege a mental state. Defendant contends that, short of the imposition of absolute liability, a mental state must be described and proved for those who fail to comply with the reporting procedure set forth in Illinois Revised Statutes 1969, chapter 95½, §§ 11—401(b) and (d) and 11—403. In support of this contention the defendant cites *Lambert v. California* (1957), 355 U.S. 225, wherein the Supreme Court ruled a California statute which required convicted felons to register on entering any county within the state violated the due process clause of the fourteenth amendment. Defendant argues in the case at bar the statutory requirement that defendant report an accident prescribes no requisite mental state and would constitute a violation of due process. The defendant further argues since the statute fails to allege a mental state, the indictment in question is defective for the same reason, the failure to allege a mental state.

■■ ■ We do not agree with the defendant's contention. The Illinois Supreme Court has upheld the validity of statutory provisions imposing liability without wrongful intent. (*People v. Fernow* (1919), 286 Ill. 627.) In *People v. Player* (1941), 377 Ill. 417, the Illinois Supreme Court held:

> "* * * a statute may forbid the doing of an act and make its commission criminal without regard to the intent or knowledge of the doer. In such cases the doing of the inhibited act constitutes the crime, * * * [and the] knowledge or ignorance of its criminal character are immaterial on a question of guilt and need not be alleged or proved. [Citations.] Such legislation has been sustained against constitutional attack on the grounds it was enacted in the exercise of the police power."

In the instant case, the statute making the leaving of the scene of an accident and not reporting it a crime is a proper exercise of the legislature's police power. Therefore, the defendant is guilty of such an offense without any showing of knowledge or intent. It logically follows that since a mental state is not an essential element of Illinois Revised Statutes 1969, chapter 95½, §§ 11—401(d) and 11—403, the indictment charging that offense need not allege a mental state.

The defendant finally contends Illinois Revised Statutes, 1969, chapter 95½, §§ 11—401(b) and (d) and 11—403, violate the defendant's con-

stitutional right against self-incrimination. The defendant maintains that requiring a motorist involved in an accident to stop and report the accident impinges upon the privilege against self-incrimination.

■■ We do not agree with the defendant's contention. In *People v. Lucus* (1968), 41 Ill.2d 370, 373 the Illinois Supreme Court held the requirement that a motorist involved in a traffic accident must identify himself does not violate the fifth amendment's privilege against self-incrimination. The court stated:

> "The gist of the offense created by the statute is not the fact of causing damage to a motor vehicle, but the concealing or attempting to conceal the identity of a driver who has been involved in an accident * * *.
>
> * * *
>
> The privilege under the fifth amendment is not without qualification. It 'is confined to real danger, and does not extend to remote possibilities out of the ordinary course of law.' [Citation.]"

In the instant case, the statute's provisions do not present a real danger of self-incrimination.

For the reasons stated herein, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

BURMAN and JOHNSON, JJ., concur.