**Edward Burns KIMOKTOAK, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 3177.**

Supreme Court of Alaska.

Sept. 1, 1978.

---

Chris J. Rigos, Asst. Public Defender, Brian Shortell, Public Defender, Anchorage, for appellant.

Monica Jenicek, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

BURKE, Justice.

Edward Burns Kimoktoak was found guilty by a jury of joyriding under AS 28.35.010 and of failure to render aid and assistance to a person he had run over with a motor vehicle under AS 28.35.060. In this appeal, Kimoktoak challenges his conviction for failure to render aid under AS 28.35.060 on the grounds that the statute is unconstitutional, that two of the instructions given the jury were improper, and that the trial court improperly allowed a sealed verdict over defense objection in violation of Criminal Rule 31(f). He challenges the joyriding conviction solely on the basis that the trial court erred in allowing the sealed verdict.

There is little dispute as to the facts in this case. At about 10–10:30 p. m. on May 22, 1976, while driving an automobile he was using without permission from the owner, appellant twice ran over one Oscar Johnson while pulling out of a parking space in a parking lot behind an Anchorage bar. Kimoktoak then drove to another part of the parking lot where he remained for several minutes. The police arrived on the scene during that time and a witness pointed out the defendant's car. The officers ran toward the car, one of them shouting to the driver to stop, but the vehicle quickly sped away. One of the policemen recognized Kimoktoak as the driver and attempt-

ed unsuccessfully to stop the car by firing a shot through the back window. The officer then put out a radio "locate" with a description of the incident, the vehicle, its license plate number and the driver. Shortly thereafter, two other officers picked up Kimoktoak at the Alaska Native Services Hospital parking lot. One of the officers knocked the defendant unconscious (there was conflicting testimony as to the reason for this), and it was necessary to take him into the hospital. He was then taken to jail at about 2:00 a. m. on May 23, 1976.

Although Kimoktoak was able to recall certain of the above events,[1] he testified at trial that he had no memory of running into or over anything or anyone on the night in question and that he suffered from memory loss at many points throughout the night. He related a story of near continuous drug and alcohol use throughout May 22 and indicated that he had suffered memory loss three or four times in the past due to drinking. Two other defense witnesses also testified as to Kimoktoak's intoxication on the day and night of the incident. A friend whom he had visited early in the afternoon of the 22nd stated that he was "very drunk." The booking officer at the jail testified that he was unable to process the defendant (i. e., get his name, address, etc. and fingerprint and photograph him) when he was brought to the jail after the incident because he was too inebriated and instead sent Kimoktoak to the detoxification unit. Among the symptoms of intoxication observed by the officer were Kimoktoak's slurred and confused speech, his inability to remain awake or to walk without assistance and an odor of alcohol about his person. The prosecution did not attempt to rebut the evidence that Kimoktoak was intoxicated throughout this period, although it did elicit testimony from the booking officer than he was not aware that the defendant had been knocked out nor did he know whether or not the defendant had been given any medication at the hospital prior to his arrival at the jail.

The victim, Mr. Johnson, was intoxicated at the time of the incident and did not remember being run over. Witnesses testified that he moaned faintly when the car went over him and that after it happened he was yelling. As a result of being run over, he suffered from knee injuries and was in the hospital for almost a month.

I

Appellant's first contention on appeal is that AS 28.35.060 fails to require criminal intent for conviction and that this violates his right to due process of law under the Fourteenth Amendment of the United States Constitution and art. I, sec. 7 of the Alaska Constitution. Appellant further contends that the requisite intent cannot be judicially read into the statute and that therefore the statute must be struck down.

AS 28.35.060 requires, in pertinent part:

The operator of a vehicle involved in an accident resulting in injury to or death of a person or damage to a vehicle which is driven or attended by a person shall give his name, address, and vehicle license number to the person struck or injured, or the operator or occupant, or the person attending, and the vehicle collided with and shall render to any person injured reasonable assistance, including making of arrangements for attendance upon the person by a physician and transportation, in a manner which will not cause further injury, to a hospital for medical treatment if it is apparent that treatment is desirable.

Subsection (c) of the statute provides that "[a] person who fails to comply with a requirement . . . regarding assisting an injured person" is punishable, upon conviction, by imprisonment for not more than 10 years or by a fine of not more than $10,000 or by both. Subsection (b) provides that "a person who fails to comply with"

---

1. Kimoktoak remembered seeing a policeman run toward his car. He drove away, according to him, because he was drunk and did not have his license with him. He also recalled being "slugged all over" by a policeman upon his arrest, and being put into the detoxification unit at the jail.

any of the other requirements of the statute is punishable by imprisonment for not more than one year or by a fine of not more than $500 or by both.

On its face AS 28.35.060 does not require that a person have knowledge of the accident or of the fact that injuries have resulted to be guilty of a serious crime. Thus, the statute appears to hold a person strictly liable for failure to render assistance even if he is unaware of any wrongdoing, i. e., unaware of the circumstances giving rise to the duty and thus unaware that he is in fact failing to do the required act. The state concedes that this is so.

 It is well-settled that an act or omission can result in serious criminal liability only when a person has the requisite criminal intent. Thus, in *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), the United States Supreme Court reversed a conviction for stealing government property because the accused had not been given the opportunity to show that he had believed the property to be abandoned, and thus did not have the wrongful intent to take property belonging to another. The Court stated:

> The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.

342 U.S. at 250, 72 S.Ct. 243, 96 L.Ed. at 293.

Referring to *Morissette*, this court has on several occasions reiterated the requirement of criminal intent. In *Speidel v. State*, 460 P.2d 77 (Alaska 1969), we invalidated part of AS 28.35.026 which made the inadvertent or negligent failure to return a rented motor vehicle a crime punishable by imprisonment up to five years and/or a fine of up to $1,000. We rejected the notion that mere inadvertent or unwitting failure to perform a legal duty could constitute a felony:

> Although an act may have been objectively wrongful, the mind and will of the doer of the act may have been innocent. In such a case the person cannot be punished for a crime, unless it is one such as the 'public welfare' type of offense, which we have discussed, where the penalties are relatively small and conviction does no great damage to an offender's reputation. . . . To make [an inadvertent, unwitting] act, without consciousness of wrongdoing or intention to inflict injury, a serious crime, and criminals of those who fall within its interdiction, is inconsistent with the general law. To convict a person of a felony for such an act, without proving criminal intent, is to deprive such person of due process of law.

460 P.2d at 80.[2] As we further explained in *Alex v. State*, 484 P.2d 677 (Alaska 1971):

> When one considers *Speidel* and *Morissette*, it is apparent that those cases deal with the necessity of basing serious crimes upon a general criminal intent as opposed to strict criminal liability which applies regardless of intention. The goal of these cases is to avoid criminal liability for innocent or inadvertent conduct. The use of the phrase 'awareness of wrongdoing' is but one means of assuring this result. The phrase does not mean a person must be aware that the conduct he is committing is specifically defined as a wrongful act. Nor does it mean that a person must know an act is proscribed by law. Rather, the requirement is that a person's intent be commensurate with the conduct proscribed.

484 P.2d at 681 [footnotes omitted].

 On its face, AS 28.35.060 appears constitutionally defective for its failure to require criminal intent, or more particularly, for its failure to require that a person knowingly fail to render assistance. The

---

**2.** As conceded by the state, the failure to render assistance statute does not create one of the strict liability "public welfare" offenses noted above. For a discussion of public welfare offenses see *Morissette v. United States*, 342 U.S. at 253–60, 72 S.Ct. 240, 96 L.Ed. at 295–98 and *Speidel v. State*, 460 P.2d at 78–79.

issue, then, is whether we may read into the statute by implication the requisite intent. We conclude that we may.

In *State v. Campbell*, 536 P.2d 105 (Alaska 1975), we held AS 11.25.260, a statute criminalizing the appropriation of lost property to the finder's use without advertising or reporting the finding to a peace officer, invalid for failure to require criminal intent. In that instance, we found that we were unable to redraft the statute in several particulars so as to validate it. In so doing, we enunciated the principle that "intent can be found by implication only in statutes which represent codifications of a common law crime." 536 P.2d at 110. This rule was derived from the United States Supreme Court's opinion in *Morissette v. United States, supra,* and our own decision in *Speidel v. State, supra.* Thus in *Campbell* we concluded that AS 11.25.260 was unconstitutional for failure to require criminal intent after determining that the statute was not merely a codification of the common law crime of larceny by appropriation of lost property.

In the instant case, it is clear that AS 28.35.060 does not codify a common law crime but rather creates a new statutory offense. If the rule in *Campbell* is applied here, it is equally clear that we may not cure the statute's constitutional infirmity by implying the requisite criminal intent. For the reasons which follow, however, we are persuaded that the principle of statutory construction enunciated in *Campbell* is overbroad.

First, we would note that neither *Morissette* nor *Speidel*, the two cases from which the *Campbell* rule was derived, establishes the principle that criminal intent may not be found by implication in statutes which do not codify a common law crime. A close reading of *Morissette* reveals that the Court only suggested in dicta that where a legislature creates a new statutory offense but omits a criminal intent requirement, a court in some cases *may* not be warranted in implying the requisite intent.[3] Similarly, the reasoning in *Speidel* may have suggested that criminal intent may not be found by implication where a statute creates a new offense, but that case does not establish this as a broad rule to be applied in all cases.[4]

■ Second, we observe that in the past, this court has not hesitated to imply a criminal intent requirement into statutes creating non-common law offenses where the statute itself was silent in this respect. Thus, in *Judd v. State*, 482 P.2d 273, 280 (Alaska 1971), we stated that the Alaska Narcotic Drug Act (AS 17.10.010 *et seq.*) makes it illegal for one to knowingly possess certain drugs. Possession of drugs is not a common law offense and the Act itself does not include a requirement that possession of the proscribed drugs be knowing. As we observed in a later case also imposing the knowledge requirement under the Act, "Penal statutes which provide for serious penalties are generally construed to require criminal intent." *Thomas v. State*, 522 P.2d 528, 530 n.4 (Alaska 1974).

Other courts, too, have implied the requisite intent where statutes creating new offenses were silent as to intent. This is particularly apparent in cases involving

**3.** 342 U.S. at 262, 72 S.Ct. 240, 96 L.Ed. at 299. In *Morissette*, the statute before the Court was a codification of the common law crime of larceny and thus the issue in the case was whether the court could properly imply intent where a statute *does* codify the common law. The Court's statement regarding statutes creating new offenses merely recognized that in some instances a legislature may intentionally create a strict liability offense and that in such cases, a court may be precluded from implying intent.

**4.** In *Speidel*, the statute in question made one who "willfully neglects" to return a motor vehi-

cle to its owner guilty of a crime. The legislature expressly defined the term "willfully neglects" in part as failing to return a vehicle "without regard for the rights of the owner, or with indifference whether a wrong is done the owner or not." AS 28.35.026(b). Thus, this was an instance where the legislature explicitly indicated that it wished to omit the requirement of wrongful intent from the crime. *Speidel* was a case, therefore, where judicial implication of intent was precluded by the legislature's express intention to eliminate such a requirement.

statutes similar to that in the instant case, for numerous jurisdictions have enacted "hit and run" statutes which, like ours, fail to expressly require that the accused knowingly fail to stop and render assistance. The great majority of courts have found the knowledge requirement to be implicit in these statutes.[5]

■ Finally, we note that in *Campbell*, we recognized the well-established rule of statutory construction that courts should if possible construe statutes so as to avoid the danger of unconstitutionality.[6] We have alluded to this rule on many other occasions. *E. g., State v. Martin*, 532 P.2d 316, 321 (Alaska 1975); *Hoffman v. State*, 404 P.2d 644, 646 (Alaska 1965). It recognizes that the legislature, like the courts, is pledged to support the state and federal constitutions and that the courts, therefore, should presume that the legislature sought to act within constitutional limits. 2 *Sutherland Statutory Construction*, § 4509, at 326 (Horack 3d Ed.1943).

■ Accordingly, we hold that to the extent that our decision in *Campbell* established the broad rule that criminal intent can be found by implication only in statutes which codify common law crimes, *Campbell* is overruled. Although we can conceive of cases where we may decline to imply such intent into statutes silent in this respect, hereafter we will resolve such questions on a case by case basis.

■ Turning to the instant case, we have little difficulty in concluding that the legislature intended that criminal liability under AS 28.35.060 attach only where the operator of a motor vehicle knowingly fails to stop

and render assistance. The statute requires an affirmative course of action to be taken by the driver and it necessarily follows that one must be aware of the facts giving rise to this affirmative duty in order to perform such a duty. Like other courts which have construed similar statutes also silent as to criminal intent, we cannot believe that the legislature could have intended that persons who unknowingly fail to stop and render assistance could be subject to serious criminal penalties. *See e. g., State v. Wall*, 206 Kan. 760, 482 P.2d 41, 45 (1971); *State v. Martin*, 73 Wash.2d 616, 440 P.2d 429, 436 (1968) *cert. denied* 393 U.S. 1081, 89 S.Ct. 855, 21 L.Ed.2d 773 (1969); *State v. Lemme*, 104 R.I. 416, 244 A.2d 585, 589 (1968). We must presume that in enacting AS 28.35.-060, the legislature acted with basic notions of fairness and due process in mind.

## II

Despite the absence of an express knowledge requirement in AS 28.35.060, the trial court did in fact instruct the jury as to this element. Appellant asserts that the court's instruction was erroneous. Instruction No. 6 was as follows:

Knowledge by the driver of the incident is necessary before he may be found guilty under Count I. However, you need not find that the driver had actual knowledge. You may find that the driver had the required knowledge where the fact of the accident and injury was visible and obvious or where the circumstances involving the incident were such· that they would lead a reasonably prudent person to assume that an accident resulting in injury to a person must have occurred.

---

**5.** *E. g., State v. Wall*, 206 Kan. 760, 482 P.2d 41, 45 (1971); *State v. Martin*, 73 Wash.2d 616, 440 P.2d 429, 436 (1968), *cert. denied* 393 U.S. 1081, 89 S.Ct. 855, 21 L.Ed.2d 773 (1969); *State v. Lemme*, 104 R.I. 416, 244 A.2d 585, 589 (1968); *Herchenbach v. Commonwealth*, 185 Va. 217, 38 S.E.2d 328 329 (1946). *See also* Annot., 23 A.L.R.3d 497 (1969). *Contra, People v. Walker*, 18 Ill.App.3d 351, 309 N.E.2d 716, 720 (1974).

**6.** 536 P.2d at 110. *Campbell* specifically stated that it was the duty of the court

to reconcile, whenever possible, challenged legislation with the constitution by rendering a construction that would harmonize the statutory language with specific constitutional provisions. However, in fulfilling that duty, the extent to which the express language of the provision can be altered and departed from and the extent to which the infirmities can be rectified by the use of implied terms is limited by the constitutionally decreed separation of powers which prohibits this court from enacting legislation or redrafting defective statutes.

Count I of the indictment is not a crime which requires a specific wrongful intent to commit.

It is appellant's contention that this instruction was erroneous because (1) it failed to clearly inform the jury as to what quantum of knowledge the accused had to possess, and (2) it permitted the jury to impute the requisite knowledge to the defendant if a reasonable person would have had such knowledge.

Under AS 28.35.060(c) a person may be imprisoned for up to ten years for failure to assist another who is injured as a result of an accident. Where only property damage has occurred, one who fails to provide the requisite information to those in the other vehicle is subject to significantly lesser penalties. It follows, therefore, that a person can be subject to the greater penalties provided for in subsection (c) only where it can be shown that he had knowledge of injury and it is not sufficient to show merely that he had knowledge of the accident or collision.

■ It is rarely possible, however, for the state to show that the accused actually knew that the injury had occurred and such knowledge must usually be proved by showing the surrounding facts and circumstances indicating such knowledge. Moreover, because of the nature of the offense, it is often difficult to show even circumstantially that the accused knew that injury to other persons had occurred. In *People v. Holford,* 62 Cal.2d 74, 403 P.2d 423 (1965), the court stated:

[T]he driver who leaves the scene of the accident seldom possesses actual knowledge of injury; by leaving the scene he forecloses any opportunity to acquire such actual knowledge. Hence a requirement of actual knowledge of injury would realistically render the statute useless. We therefore believe that criminal liability attaches to a driver who knowingly leaves the scene of an accident if he actually knew of the injury or if he knew that the accident was of such a nature that one would reasonably anticipate that it resulted in injury to a person.

403 P.2d at 427 [footnote omitted]. *Accord, State v. Minkel,* 230 N.W.2d 233, 235–36 (S.D.1975). We agree with this view and accordingly hold that criminal liability under AS 28.35.060(C) attaches to a driver who leaves the scene of an accident where the state can prove by direct or circumstantial evidence that the driver actually knew of the injury or that he knew that the accident was of such a nature that one would reasonably anticipate that it resulted in injury to a person.

■ Under the above standard, we believe that the instruction given by the court below erroneously charged the jury as to the element of knowledge. We do not find that the instruction was confusing as to whether knowledge of injury or mere knowledge of an accident was required. It is true that the instruction speaks at one point of knowledge of the "incident" and had this been a case where there was a collision between two vehicles, use of the word incident may have been confusing. However, the instant case involved appellant's failure to render assistance after he had run someone over and hence knowledge of the incident would in fact be knowledge of the injury.

Where we do find error, however, is in the court's instructing the jury that it could find knowledge of injury "where the circumstances were such that they would lead a reasonably prudent person to assume that an accident resulting in injury" must have occurred. It is not the reasonable person who is on trial but the defendant and it is the defendant's knowledge which must be proved and not that of a hypothetical reasonable person. The standard we have enunciated does speak in terms of reasonableness in that the evidence must at least show that the accused knew that the accident was of the sort that one would "reasonably anticipate" would cause personal injury. However, it must be shown that the *defendant* knew of the nature of the accident before the jury can then determine whether such knowledge would reasonably lead one to conclude that injury had occurred. While this distinction may be a

subtle one, we think it is a crucial one and one which the instruction given did not make. As the giving of this erroneous instruction was clearly harmful error, appellant's conviction for failure to render aid must be reversed.

### III

Although the giving of the above instruction was reversible error in itself, we think it appropriate to resolve another related issue in this case. The defense requested but the trial court refused to give an instruction informing the jury that it could consider the accused's intoxication as a factor bearing on his knowledge of injury or lack thereof. Instead, the court gave the following instruction:

> Our law provides that 'no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition.'
>
> This means that drunkenness, if the evidence shows that the defendant was in such a condition when allegedly he committed the crimes charged, is not of itself a defense in this case. It may throw light on the occurrence and aid you in determining what took place, but when a person in a state of intoxication, voluntarily produced by himself, commits a crime such as any of those charged against the defendant in this case, the law does not permit him to use his own vice as a shelter against the normal legal consequences of his conduct.
>
> As used above intoxication refers to intoxication from the use of a drug, as well as to intoxication from alcohol.

It is clear that this instruction did not permit the jury to consider Kimoktoak's intoxication as it related to his knowledge or lack of knowledge.

AS 11.70.030 provides in part:

> *Intoxication as defense.* (a) An act committed by a person while in a state of voluntary intoxication is not less criminal because he was intoxicated. However, when the existence of a particular motive, purpose, or intent is a necessary element to constitute a particular species,

or degree of crime, the jury may take into consideration the fact that the defendant was intoxicated at the time in determining the purpose, motive, or intent with which he committed the act.

Under this statute, voluntary intoxication is generally no defense to a crime but where purpose, motive or intent is an element of a crime, such intoxication may be considered by the jury in determining whether or not the accused in fact had the requisite purpose, motive or intent.

The state maintains that an intoxication instruction under AS 11.70.030 is appropriate where the crime charged is one requiring specific intent and that since failing to render aid only requires general criminal intent, an intoxication instruction was properly refused below. In *People v. Hood,* 1 Cal.3d 444, 462 P.2d 370 (1969), the Supreme Court of California described the difference between specific and general criminal intent as follows:

> When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.

462 P.2d at 378. We agree with the state that failing to render assistance under AS 28.35.060 is not a specific intent crime but one which merely requires general criminal intent. A person need only knowingly fail to assist and need not do so with the intent to achieve a further consequence. We also agree that under AS 11.70.030, intoxication can be considered as to intent only when the intent required is so-called specific intent as described above. *See Kvasnikoff v. State,* 521 P.2d 903, 906 n.8 (Alaska 1974); *People v. Hood, supra,* 1 Cal.3d 444, 462 P.2d at 378-79.

██ AS 11.70.030, however, also permits a jury to consider intoxication where purpose or motive is an element of the crime

charged. Strictly speaking, knowledge or awareness of a factual situation does not come within the meaning of purpose or motive. However, knowledge is a mental state that is closely related to that constituting a motive or purpose and we believe that knowledge is fairly embraced within the concepts of motive and purpose as used in AS 11.70.030. In interpreting a statute containing language virtually identical to that found in AS 11.70.030, the California courts have reached the same conclusion. *People v. Foster,* 19 Cal.App.3d 649, 97 Cal. Rptr. 94, 98 (1971); *People v. Garcia,* 250 Cal.App.2d 15, 58 Cal.Rptr. 186, 190 (1967). Such a result, we further believe, is required in light of our holding above that knowledge is a necessary element of the crime of failing to render assistance, for if intoxication in fact has precluded such knowledge, this element of the crime is necessarily absent. We are aware that voluntary intoxication generally will not excuse criminal acts requiring only general intent. However, once an element of a crime is that the defendant acted or failed to act with a particular mental state, *i. e.,* knowledge, we think that the effect of intoxication on this mental state cannot be ignored. *See People v. Rocovich,* 269 Cal. App.2d 489, 74 Cal.Rptr. 755, 758 (1969).

■■■■■ We hold, therefore, that where one is charged with failure to render assistance under AS 28.35.060, and where there is

evidence of intoxication, the jury may consider the fact that the accused was intoxicated in determining whether he had the requisite knowledge.[7] There clearly was ample evidence at trial that appellant was intoxicated at the time of the alleged offense and therefore the lower court erred in not instructing the jury as to the effect of such intoxication on his knowledge of the facts giving rise to a duty under AS 28.35.-060.

## IV

■■■■ Appellant's final argument on appeal is that under Rule 31(f), Alaska R.Crim.P., the trial court erred in ordering a sealed verdict over defense objection.[8] Criminal Rule 31(f) provides:

Upon stipulation of counsel, the court may permit the foreman of the jury to date, sign and seal in an envelope a verdict reached after the usual business hours. The jury may then separate, but all must be in the jury box to deliver the verdict when the court next convenes or as instructed by the court.

There is no question that under this rule, the trial court may allow a sealed verdict only when counsel so stipulate and that the court below erred in permitting a sealed verdict when the defense objected to one. The only issue then is whether the trial court's error requires reversal of Kimoktoak's conviction for joyriding.[9]

---

**7.** We approve of the following instruction based upon the California Jury Instructions—Criminal (Supp.3d Ed.1970).

In the crime of [failure to render assistance] of which the defendant is accused [in Count . . . of the information], a necessary element is the existence in the mind of defendant of knowledge that [injury has occurred or knowledge that the accident was of such a nature that one would reasonably anticipate that it resulted in injury to a person].

If the evidence shows that the defendant was intoxicated at the time of the alleged offense, the jury should consider his state of intoxication in determining if defendant has such knowledge.

If from all the evidence you have a reasonable doubt whether defendant had such knowledge by reason of a state of intoxication, you must give the defendant the benefit

of that doubt and find that he did not have such knowledge.
CALJIC 4.25.

**8.** At the close of trial on August 11, 1976, the court informed counsel that it would instruct the jury that if it reached a verdict after court hours, it could enter the verdict, seal it in an envelope, return home and announce the verdict in open court on the following day. Defense counsel objected to this instruction but the objection was overruled. The jury reached its verdict at 9:30 p. m. that night, sealed it and announced it in court the following morning.

**9.** AS 28.35.010 provides in part:

*Driving a vehicle without owner's consent.* (a) A person who drives, tows away, or takes a vehicle not his own without the consent of the owner, with intent temporarily to deprive the owner of possession of the vehi-

In *Johnson v. State,* 577 P.2d 1063 (Alaska 1978), we recently held that reversal was required where the trial court allowed a sealed verdict over defense objection. In response to the state's argument that the error was harmless, we stated:

> In fact, we have no way of knowing whether defendant's rights were prejudiced by the trial court's disregard for the mandate of Rule 31(f). The language of that rule is clear and unambiguous, and leaves no room for judicial construction. This was not an inadvertent mistake by the trial court. It was a deliberate refusal to follow a promulgated rule. If the rule is to have any vitality, it must be obeyed under the circumstances of this case.

577 P.2d at 1064. *Johnson* clearly controls here and therefore, appellant's conviction for joyriding under AS 28.35.010 must be reversed.[10] His conviction for failing to render assistance under AS 28.35.060 is also reversed on this ground and those discussed above.

REVERSED and REMANDED for a new trial.

MATTHEWS, Justice, dissenting in part.

For the reasons stated in my dissent in *Johnson v. State,* 577 P.2d 1063, Opinion No. 1612 (Alaska, May 5, 1978), I believe that the sealed verdict procedure followed by the superior court was harmless error. This court has now amended Criminal Rule 31(f) to permit the non-consensual use of a sealed verdict. The court has therefore recognized that this procedure does not harm the rights of an accused in a criminal case. That recognition should govern here. Thus, I would affirm appellant's conviction for joyriding. With the remainder of the opinion, I agree.

cle, or a person who is a party or accessory to or an accomplice in the driving or unauthorized taking is guilty of a [misdemeanor or felony, depending on whether first or subsequent offense].

10. We would note that effective September 1, 1978, Criminal Rule 31(f) will be changed pursuant to Supreme Court Order No. 316 so as to allow trial courts to permit sealed verdicts in their discretion, without the need for stipulation of counsel.