Edward A. MILLER, Appellant,

v.

STATE of Alaska, Appellee.

No. 5429.

Court of Appeals of Alaska.

Oct. 8, 1982.

Thomas E. Fenton, Fairbanks, for appellant.

Randy Olsen, Asst. Dist. Atty., Fairbanks, Charles M. Merriner, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Edward A. Miller pled no contest to a charge of operating a motor vehicle while under the influence of intoxicating liquor. (OMVI, AS 28.35.030(a)) [1] He specifically reserved for argument on appeal his contention, rejected by the trial court, that his prior conviction for leaving the scene of an accident in violation of AS 28.35.050(b) [2] and 28.35.060(a) [3] and his acquittal for failure to exercise care to avoid colliding with another vehicle, in violation of 13 AAC 02.-545(b),[4] barred his OMVI prosecution under the state and federal constitutional provisions prohibiting placing a criminal defendant twice in jeopardy.[5] The trial court and the prosecution both agreed to the reservation of this issue for appeal and the prosecution conceded that if Miller prevails on appeal his OMVI conviction must be set aside and the case dismissed. We therefore have jurisdiction to hear this appeal. *Oveson v. Municipality of Anchorage,* 574 P.2d 801 (Alaska 1978); *Cooksey v. State,* 524 P.2d 1251 (Alaska 1974). *Compare Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975); *Launius v. United States,* 575 F.2d 770 (9th Cir. 1978) (holding that a counseled plea of guilty does not constitute an implied waiver of a claim based upon the double jeopardy clause of the federal constitution).

We will state only those facts necessary to a discussion of the issues presented.

On December 4, 1979, Patrick Garner and two friends had dinner at Club 11, a restau-

1. In 1979, AS 28.35.030(a) provided in relevant part:

   A person who, while under the influence of intoxicating liquor ... operates or drives an automobile, motorcycle or other motor vehicle in the state, upon conviction, is punishable by ...

2. AS 28.35.050(b) provides in relevant part:

   The operator of a vehicle involved in an accident resulting only in damage to a vehicle driven or attended by a person shall immediately stop the vehicle at the scene of the accident or as close to it as possible and return to, and remain at, the scene of the accident until he has fulfilled the requirements of § 60 of this chapter.

3. AS 28.35.060(a) provides:

   The operator of a vehicle involved in an accident resulting in injury to or death of a person or damage to a vehicle which is driven or attended by a person shall give his name, address, and vehicle license number to the person struck or injured, or the operator or occupant, or the person attending, and the vehicle collided with and shall render to any person injured reasonable assistance, including making of arrangements for attendance upon the person by a physician and transportation, in a manner which will not cause further injury, to a hospital for medical treatment if it is apparent that treatment is desirable. Under no circumstances is the giving of assistance or other compliance with the provision of this paragraph evidence of the liability of an operator for the accident.

4. 13 AAC 02.545(b) provides:

   Every driver of a vehicle shall exercise care to avoid colliding with a pedestrian, an animal or another vehicle.

5. U.S. Const. amend. V: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb; ..." Alaska Const. art. 1, § 9: "No person shall be put in jeopardy twice for the same offense."

rant and bar located on the Richardson Highway about eleven miles outside of Fairbanks. They finished their meal at about 9:30 p.m., left the restaurant, and entered Garner's car. Garner drove out of the parking lot and as he was making a right turn onto the Richardson Highway, his car was struck from behind by a car admittedly driven by the defendant. Garner had traveled approximately 180 feet and shifted from second to third gear at the moment of impact. Garner's car slid off the road and down an embankment while the defendant's car proceeded further about 1,000 yards before stopping. Garner and his companions reported the accident to the state troopers and a state trooper arrived about twenty minutes later. The trooper was unable to find anyone attending defendant's car, but he did find a checkbook with Miller's name and address in the vehicle. He deduced from tracks in the snow that someone had taken traffic cones from the back of the vehicle and placed them around it. Though the tracks led to the back and around the defendant's car, he did not observe any footprints leading toward Garner's disabled vehicle. The trooper investigating the accident observed an empty can of beer in the car and smelled a heavy odor of alcohol in the car.

At about 11:30 p.m., after completing his investigation at the scene, the trooper called defendant's residence and asked that the defendant come to the police station immediately. The trooper testified that there was no record that Miller reported the accident or called the state troopers. Miller eventually came down to the police station and was interviewed by the state troopers at about 12:00 a.m. He told them that he was driving the vehicle involved in the collision with Garner and that he had attempted to contact Garner, but that Garner would not talk to him. He also stated that the Garner vehicle had no tail lights illuminated at the time of the accident. The officer testified that when he examined the disabled Garner vehicle the lights were not burning but were operational when turned on.

Miller was given and failed to pass certain field sobriety tests and was also given a breathalyzer examination, registering a 0.14% blood alcohol level. (In 1979, a blood alcohol rate of 0.10% created a presumption that the person tested was under the influence of intoxicating liquor. AS 28.35.-033(a)(3) (repealed 1980)). The defendant appeared quite intoxicated to the trooper who interviewed him. The trooper testified, however, that he did not arrest Miller for OMVI because Miller accounted for his current state of intoxication by stating that he had drunk a six-pack of beer after returning home from the accident. Given this explanation, the trooper concluded that a charge of OMVI was not warranted. Miller was subsequently tried for leaving the scene of an accident and failing to exercise care to avoid the accident.

At his trial Miller testified and told a substantially different story from the one allegedly related by him to the troopers. He testified that he began drinking during his lunch break the day of the accident. He stated that he continued to drink during the day, and at the time of the accident had consumed between twenty and twenty-nine beers. He admitted lying to the troopers about drinking at home after the accident, stating that he was afraid of the possibility that he would be incarcerated for drunk driving. He testified at trial, contrary to what he had allegedly told the troopers, that he did not remember putting the traffic cones out, nor did he remember the accident, or the interview at the police station.

Miller's apparent trial strategy was to persuade the jury that he was so intoxicated at the time of the accident that he was incapable of knowing that he had been in an accident, and could not therefore have formed the requisite intent for conviction for leaving the scene of an accident. See Kimoktoak v. State, 584 P.2d 25, 33–34 (Alaska 1978). After hearing Miller's trial testimony, the prosecutor filed an information charging him with operating a motor vehicle while under the influence of liquor. The information was filed prior to the return of the jury's verdict. Miller contends

that this information was barred by his trial for leaving the scene and failing to exercise care to avoid the accident.

## DOUBLE JEOPARDY

The double jeopardy clauses of the state and federal constitutions provide in substance that no person should be twice put in jeopardy for the same offense. The federal provision is applicable to the states through the due process clause of the fourteenth amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

In discussing the federal constitutional guarantee, the United States Supreme Court has said:

> That guarantee [the constitutional prohibition of double jeopardy] has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969) (footnotes omitted). *See also Illinois v. Vitale,* 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228, 235 (1980).

■ Because Miller contends that his former conviction for leaving the scene and his former acquittal for failing to avoid the accident independently bar his subsequent OMVI conviction, we are concerned with the first and second facits of the guarantee. Since the Alaska and federal decisions use slightly different tests to determine which violations of separate statutes are neverthe-less the "same offense" for double jeopardy purposes, it would normally be necessary to discuss federal and state law separately. *Compare Whitton v. State,* 479 P.2d 302, 312 (Alaska 1970), as interpreted in *Calder v. State,* 619 P.2d 1026, 1028 (Alaska 1980)[6] *with Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) as interpreted in *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 194 (1977).[7] In this case, however, an exception to the governing rules resolves the problem under federal law and we believe should have the same effect under Alaska law. The Supreme Court of the United States pointed out in *Brown:*

> An exception may exist where the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence.

432 U.S. at 169 n. 7, 97 S.Ct. at 2227 n. 7, 53 L.Ed.2d at 196 n. 7. We reach the same conclusion. *Compare Spencer v. State,* 611 P.2d 1 (Alaska 1980), and *Adams v. State,* 598 P.2d 503 (Alaska 1979).

Here, the trial court specifically found that the police did not have sufficient evidence to charge Miller with OMVI until he testified. Since the prosecution was not entitled to discover Miller's testimony or trial strategy prior to trial, *Scott v. State,* 519 P.2d 774 (Alaska 1974), we cannot say that this conclusion by the trial court was clearly erroneous. While the investigating troopers smelled alcohol in the vehicle driven by defendant and found an empty beer can, no one observed Miller's driving prior

6. The Alaska rule has been summarized as follows:

> The test we announced in *Whitton v. State,* 479 P.2d 302, 312 (Alaska 1970), for determining whether separate statutory crimes constitute the "same offense" for purposes of prohibiting double punishment, is whether differences in intent or conduct between the statutory offenses are substantial in relation to the basic social interests protected or vindicated by the statutes.

*Calder v. State,* 619 P.2d 1026, 1028 (Alaska 1980).

7. The federal rule has been summarized as follows:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not . . . .

*Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 194 (1977), quoting *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

to the accident. The accident itself is as compatible with Garner's negligence as it is with Miller's, and Miller's care in placing the traffic cones shows a consciousness of his surroundings, arguably inconsistent with OMVI. Further, the troopers were not able to interview Miller until two and one-half to three hours after the accident. While Miller appeared intoxicated at that time, failed field sobriety tests, and produced a positive breathalyzer reading of 0.14%, the trial court could have found that the troopers were reasonable in their belief that this evidence standing alone would not establish drunk driving. This belief appears particularly reasonable since the troopers could not disprove Miller's assertion that he had drunk substantially in the interval between the accident and his interview at the police station.

■ Consequently, we must accept the trial court's finding that the state could not have discovered the evidence necessary to convict Miller of OMVI prior to his trial for leaving the scene and failing to avoid the accident in the exercise of due diligence. His subsequent conviction for OMVI did not, therefore, violate the prohibition found in our state and the federal constitution against putting someone twice in jeopardy.

## COLLATERAL ESTOPPEL

■ In *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the United States Supreme Court held that the doctrine of collateral estoppel was included within the double jeopardy clause of the United States Constitution. It described the doctrine as follows:

[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.

*Id.* at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475. Recognizing that most criminal jury trials result in a general verdict, the court cautioned that the doctrine should not be given a hyper-technical application. Rather, the trial court should:

"[E]xamine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."

*Id.* at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475–76 (footnote omitted).[8] Miller contends that the issue of his intoxication was determined by the jury either in acquitting him of failing to avoid the accident or in convicting him of failing to render aid. We disagree. The jury could well have concluded that Garner made a right turn out of the Club 11 parking lot directly in Miller's path causing the accident. Construing the evidence favorably to Miller, the accident occurred 180 feet from the parking lot entrance, a distance Miller would have traveled in less than three seconds if he was proceeding at fifty miles per hour as he told the investigating trooper. Thus, the jury could have concluded that even if Miller was intoxicated his intoxication did not cause the accident, because even a sober man in Miller's position could not have avoided Garner's vehicle. Miller's intoxication was therefore not necessarily determined by the jury.

We also believe that the jury could have found Miller guilty of leaving the scene of the accident without necessarily finding that he was driving under the influence of alcohol.[9] Intoxication is a defense to leaving the scene in that it could prevent a jury

**8.** The Alaska Supreme Court recognized the applicability of "collateral estoppel" to criminal cases in *DeSacia v. State,* 469 P.2d 369, 379 (Alaska 1970); and *Dapcevich v. State,* 360 P.2d 789, 792–93 (Alaska 1961); *cf. State v. Kott,* 636 P.2d 622 (Alaska App.1981).

**9.** A general verdict of guilty ordinarily prevents a defendant from relying on a prior conviction to bar consideration of an issue at a subsequent trial. It is assumed that all issues were resolved against him. *See* Nimmer, *The Double Jeopardy Clause as a Bar to Reintroducing Evidence,* 89 Yale L.J. 962, 973 (1980). Since intoxication is both a possible defense to leaving the scene and an element of OMVI, we consider their interplay in light of the collateral estoppel doctrine.

from finding that Miller had the requisite knowledge that an accident had occurred. *Kimoktoak v. State,* 584 P.2d at 33–34; *contra* AS 11.81.900(a)(2). However, a jury could reasonably conclude that one was sufficiently intoxicated to be driving under the influence and yet not so intoxicated that he was unaware that he had been involved in an accident. If the jury believed the trooper's testimony, Miller specifically told him that he was aware of the accident and sought unsuccessfully to communicate with the other driver. Consequently, we conclude collateral estoppel did not preclude Miller's prosecution for OMVI.[10]

The decision of the district court is AFFIRMED.

10. Miller did not seek to have the OMVI charges dismissed in the lower court because of prosecutorial vindictiveness, nor did he argue this issue in his brief. He did raise it in passing in oral argument. We therefore decline to consider the issue, having concluded that it was improperly preserved for appeal. Prosecutorial vindictiveness is discussed in *Atchak v. State,* 640 P.2d 135 (Alaska App.1981).