UNITED STATES of America,
Plaintiff,

v.

Gerald A. FICKE, Defendant.

No. 8:98CR201.

United States District Court,
D. Nebraska.

July 16, 1999.

Michael Norris, U.S. Attorney's Office, Omaha, NE, for U.S.

Mary Buckley, Federal Public Defender's Office, Omaha, NE, for defendant.

## MEMORANDUM AND ORDER

BATAILLON, District Judge.

### I. Introduction

Before me are the defendant's first and second motions (Filing Nos. 42 and 50) to dismiss the indictment (Filing No. 1) that charges him with one count of violating 18 U.S.C. § 922(g)(9) by possessing firearms following a state misdemeanor conviction for domestic assault. Subsection 922(g)(9) makes it unlawful for any person "convicted in any court of a misdemeanor crime of domestic violence" to possess a firearm which had been shipped or transported in interstate commerce. 18 U.S.C. § 922(g)(9). The penalties faced by a person found guilty of violating this subsection include a maximum of ten years imprisonment, a fine up to $250,000, or both a fine and imprisonment, and three years of supervised release. 18 U.S.C. § 924(a)(2).

The parties appeared for a hearing held on these motions on June 22, 1999. Counsel for the defendant filed affidavits (Filing Nos. 43 and 51) in support of each motion and submitted supporting briefs. Counsel for the government submitted a brief opposing the first motion, but did not have an opportunity to submit a brief opposing the second motion because the defendant filed it the day before the hearing on the first motion. I gave the parties leave to file post-hearing briefs on the second motion. See Filing No. 52. I have now reviewed the record, the parties' briefs, the parties' arguments presented at the hearing, and the applicable law, and I conclude that the indictment should be dismissed.

### II. Factual Background

In April 1994, the defendant entered a pro se plea of no contest to a charge of misdemeanor assault in connection with an incident of domestic violence. The county court judge imposed a sentence of six months probation and ordered the defendant to complete anger control classes. Filing No. 51, Aff. of Def. Counsel in Support of Motions to Dismiss, Ex. 51 at 2–4. The defendant successfully completed probation in October 1994. *Id.* at 5.

In September 1998, Oakland, Nebraska police officers arrested the defendant at his home after his wife reported an alleged domestic assault. At the home, the officers found and confiscated a Mossberg .12 gauge pump shotgun, a Mossberg .410 bolt action shotgun, and a .22 caliber rifle. Presentence Investigation Report at 4, ¶ 10. The defendant concedes that the rifles had all been shipped in interstate commerce. *Id.*, ¶ 13. Neither the defendant's wife nor the arresting officers indicated that the defendant used the guns to actually threaten his wife during the alleged assault. *Id.* at 5, ¶ 14.

The indictment resulted from the operation of 18 U.S.C. § 922(g)(9), a type of strict liability provision added to section 922(g) in 1996 by Pub.L. No. 104–208, § 101(f). The defendant pleaded guilty in this court on March 18, 1999, to the charge in the indictment. Two weeks later, however, a federal district court in Texas ruled that a similar, related provision, 18 U.S.C. § 922(g)(8), violated the Second and Fifth Amendments to the United States Constitution. *United States v. Emerson,* 46 F.Supp.2d 598 (N.D.Tex. 1999). On the basis of *Emerson,* the defendant moved to withdraw his guilty plea. Filing No. 29. I denied the motion at a hearing on April 13, 1999, see Filing No. 31, but advised the defendant's lawyer that I would entertain a motion to dismiss if it were filed before sentencing. The defendant has now moved to dismiss the indictment, arguing

that subsection 922(g)(9) is an unconstitutional violation of the fundamental due process principles of notice and fair warning.

### III. Discussion

The defendant argues that as applied to him, 18 U.S.C. § 922(g)(9) violates the notice and fair warning requirements of the due process clause of the United States Constitution. While conceding the reasonableness of the rationale for section 922(g)(9)—keeping guns out of the hands of those convicted of domestic violence crimes—the defendant nevertheless argues that it is fundamentally unfair to punish him for violating section 922(g)(9) when 1) his conduct in possessing the firearms was "wholly passive," and 2) he did not know that federal law proscribed his possession of firearms.

The United States Supreme Court has struck down other criminal provisions which similarly snared unsuspecting citizens. In the seminal case, a woman who previously had been convicted of a felony was arrested on suspicion of another offense. At the time of this arrest, she had been a resident of Los Angeles for seven years. Yet upon her arrest, she was also charged with violating Los Angeles municipal regulations requiring a felon to register with police. The Court ruled that the municipal regulations violated the due process requirement of the Fourteenth Amendment when applied to a person such as the defendant who had no actual knowledge of the duty to register. *Lambert v. California,* 355 U.S. 225, 229–30, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957). The Court noted that the defendant's failure to register was "conduct that is wholly passive.... It is unlike the commission of acts, or the failure to act under circumstances that should alert the doer to consequences of his deed." *Id* at 228, 78 S.Ct. 240.

Another defendant raised similar arguments when facing felony charges under 18 U.S.C. § 922(g)(8), a related provision that prohibits possession of firearms by any person subject to a domestic violence restraining order. *United States v. Emerson,* 46 F.Supp.2d 598 (N.D.Tex. 1999). The defendant was subject to a temporary restraining order in a divorce action brought by his wife. At the 1998 hearing on the application for the TRO, the defendant had appeared pro se. The judge issuing the TRO, however, did not inform the defendant that he would be subject to federal prosecution for possessing firearms while subject to the TRO. In dismissing the federal indictment against the defendant, the federal district court described section 922(g)(8) as "easy to understand, but it is hard to discover, which in the end compels the same result as demonstrated by *Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957)." *Id.* at 612. The court called the section an "obscure, highly technical statute with no mens rea requirement." *Id.* Consequently, the court, said, "[d]ue process requires some adequate, meaningful form of fair warning or notice to a respondent to a protective order that he will be committing a crime if he possesses a firearm." *Id.* The court went on to hold, *inter alia,* that the statute violated the defendant's Fifth Amendment due process rights because it subjected him to prosecution without proof that he knew he was violating the statute.

The *Emerson* court relied heavily on Judge Posner's dissent in *United States v. Wilson,* 159 F.3d 280, 293 (7th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 2371, —— L.Ed.2d —— (1999). In *Wilson,* the defendant was convicted under 18 U.S.C. § 922(g)(8) of possessing a firearm while subject to a protective order. The majority ruled that the statute was a valid exercise of Congress's power under the Commerce Clause and that the statute did not violate the Tenth Amendment or due process. Judge Posner, however, rejected the majority's constitutional due process reasoning based on the particular facts of the case.

It is wrong to convict a person of a crime if he had no reason to believe that the act for which he was convicted was a

crime, or even that it was wrongful. This is one of the bedrock principles of American law.... In the unusual circumstances of this case, the maxim of expedience should yield to the bedrock principle; and there is enough room in the statutory language to achieve this end without having to trundle out the heavy artillery of constitutional law.

*Id.* at 293 (emphasis in original). Judge Posner said that to avoid imprisoning people for acts they "could not have suspected [were] a crime or even a civil wrong," the government should be expected to prove that the violators knew that they were committing crimes. "This is the standard device by which the courts avoid having to explore the outer boundaries of the constitutional requirement of fair notice of potential criminal liability." *Id.*

Judge Posner further observed that section 922(g)(8) was not "the kind of law that a lay person would intuit existed because the conduct it forbade was contrary to the moral code of society," *id.* at 294, offering as a comparison child pornography. Owning guns is legal conduct for nonfelon citizens. Indeed, " '[T]here is a long tradition of widespread lawful gun ownership by private individuals in this country.' " *Id.* at 296 (*quoting Staples v. United States*, 511 U.S. 600, 610, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994)). Judge Posner notes that it would never have occurred to the defendant in *Wilson* that he would have to give up his guns once the judge issued the TRO, especially since the judge never informed the defendant he was ordered to do so either orally or in the TRO and he had no lawyer to pass on the warning.

Strict liability crimes are permissible, Judge Posner notes, when "the existence and content of the criminal prohibition ... are not hidden; the defendant is warned to steer clear of the core of the offense," such as with statutory rape, food or drug tampering, or laws relating to one's business. *Id.* at 296. Further, conscience and common knowledge often provide all the notice of the existence of a law that is required, laws criminalizing burglary and ownership of hand grenades serving as examples. In still other cases, that defendants had a "reasonable opportunity" to learn about the laws bearing on their activities satisfies the notice requirement, such as food and drug laws governing the shipment of pharmaceuticals. *Id.*

The problem with section 922(g)(8) is that it fits none of these classifications. Section 922(g)(8) as enacted is a strict liability crime, but "the existence and content of the criminal prohibition" were hidden from the defendant in *Wilson.* Neither conscience or common knowledge would have informed the defendant that possessing firearms while subject to a TRO was criminal conduct, nor would the defendant ever have had a "reasonable opportunity" to learn about the operation of section 922(g)(8), since he would have no occasion "to go to the local law library and read Title 18." *Id.* at 295. Therefore, Judge Posner concludes,

> If none of the conditions that make it reasonable to dispense with proof of knowledge of the law is present, then to intone 'ignorance of the law is no defense' is to condone a violation of fundamental principles for the sake of a modest economy in the administration of criminal justice.

*Id.* Judge Posner insists that all the United States Department of Justice had to do to serve the purpose of the law and to provide adequate notice of its existence was to publicize it in all state courts with the power to issue TROs in domestic relations cases.

I am persuaded that the notice analysis in *Emerson* and in Judge Posner's *Wilson* dissent is the correct reasoning to resolve this case. The defendant here would have no way of knowing that mere possession of hunting firearms had become felonious conduct two years after his misdemeanor conviction unless he spent considerable time in law libraries keeping track of amendments to federal firearms statutes, a highly unlikely scenario considering the defendant's educational background, or he otherwise received notice of the section's

enactment and its application to his situation. While section 922(g)(9) is not "highly technical" in the same way that tax provisions are, *see Ratzlaf v. United States*, 510 U.S. 135, 144–45, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994); *Cheek v. United States*, 498 U.S. 192. 199–200, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), it presents the same "danger of ensnaring individuals engaged in innocent conduct." *Bryan v. United States*, 524 U.S. 184, 118 S.Ct. 1939, 1947, 141 L.Ed.2d 197 (1998). The defendant simply did not know and did not receive fair warning that his conduct had become unlawful.

The defendant here is not raising the sort of equal protection challenge found in *United States v. Lewitzke*, 176 F.3d 1022 (7th Cir.1999). There, the defendant argued that 18 U.S.C. § 922(g)(9) irrationally singled out anyone convicted of a domestic violence charge, no matter how far in the past the conviction had occurred. The court disagreed, finding that the section 922(g)(9) firearms ban rationally served the interest of protecting the public and potential domestic assault victims from the harm that can be caused by firearms left in the wrong hands. Since, by definition, those convicted of domestic violence have already harmed their domestic partners at least once, the court found that "[i]t certainly would not be irrational for Congress to conclude that these individuals pose the most acute danger of turning a gun on a family member." *Id.* at 1026.

Instead, the defendant's challenge rests on notice and fair warning requirements. Unlike the defendants in both *Emerson* and *Wilson*, who became subject to TROs after the passage of section 922(g)(8), the defendant here entered his pro se plea of no contest to state charges of misdemeanor domestic assault in 1994—two years before it became a federal felony for a person with a misdemeanor domestic assault conviction to possess firearms. The county court judge who sentenced the defendant to six months probation in 1994 obviously, therefore, could not have informed him when accepting his pro se no contest plea that one consequence of his

misdemeanor conviction would be a nearly automatic federal felony conviction were he ever found in possession of firearms, even hunting weapons. The defendant continued to possess and to use the hunting weapons involved in this prosecution—perfectly legal behavior under both state and federal law—until an act of Congress in 1996, suddenly and without notice to him, made possession of those weapons a felony offense. Since the defendant had appeared pro se on the underlying misdemeanor charge, he obviously had no lawyer who could have called him up two years later with the warning that he should divest himself of his guns.

The only case I have been able to find with analogous facts involved a defendant who had been convicted of misdemeanor domestic assault in 1995, a year before passage of section 922(g)(9). *United States v. Boyd*, 52 F.Supp.2d 1233 (D.Kan. 1999). In 1999, a grand jury indicted him with having knowingly and intentionally received and possessed two semi-automatic pistols in 1998. The district court turned away the defendant's challenges based on the Commerce Clause, the Ex Post Facto Clause, the Second Amendment, and equal protection. It did not, however, address the notice and fair warning issue raised by the defendant in this case, issues which I believe are fundamental to this case.

IV. Conclusion

Section 922(g)(9) criminalizes behavior that for two years following this defendant's misdemeanor conviction was entirely innocent under both federal and state law. The defendant therefore received no warning during the underlying misdemeanor proceedings, at which he appeared pro se, that continued possession of his hunting weapons would subject him to a federal felony prosecution. The defendant had no actual notice of the enactment of this obscure, hard-to-find provision, nor would he have had a reasonable opportunity to discover it. Accordingly,

IT IS THEREFORE ORDERED that the defendant's motions (Filing Nos. 42

and 50) to dismiss the indictment are granted.