DECISION
The State of Rhode Island charged Defendants Robert Morris, Stephen Medeiros and Jim Patterson with multiple counts of possessing overages of summer flounder pursuant to Department of Environmental Regulation (Reg.) 7.7.2-2 and failing to notify law enforcement prior to offloading summer flounder pursuant to Reg. 7.7.5-1c.[1] Both of these regulations were promulgated pursuant to G.L. 1956 § 20-1-2 and G.L. 1956 § 20-1-12.
Defendants move to dismiss the charges on grounds that both regulations were promulgated in violation of the Administrative Procedures Act. Additionally, Defendants also move to dismiss the second set of counts on the grounds that the enforcement of Reg. 7.7.5-1c violated Defendants' due process rights, and that this regulation violates the constitutional privilege against self-incrimination. The State objects to these arguments. The case was first brought in Rhode Island District Court pursuant to § 20-1-12(c) and was transferred to Superior Court on Defendants' motion pursuant to Dist. R.Crim.P. 23.
FACTS AND TRAVEL
In order to preserve the species of summer flounder, the United States Department of Commerce controls the poundage that may be caught by fishermen from each state every year.
As part of its duty to protect fish and wildlife in the state of Rhode Island, the Rhode Island Department of Environmental Management (DEM) is responsible for enforcing the limits set in place by the U.S. Department of Commerce. It does so by enacting rules and regulations, upon the advice of the Rhode Island Marine Fisheries Council (RIMFC), which govern the per-vessel amount of summer flounder that may be caught during certain periods of time, and by requiring fisherman to notify the Rhode Island Office of Law Enforcement (RIOLE) prior to offloading certain amounts of flounder so RIOLE may inspect in order to ensure compliance.[2]
The summer flounder possession limits for each quarterly season are delineated in DEM Regs. 7.7.1-1 through 7.7.1-4. Between May and September 1999, DEM amended these limits eight times.[3] These changes were added to the text of Reg. 7.7.2-2 each time. The amendments changed the possession limits on summer flounder from anywhere between three hundred (300) pounds to zero pounds (completely prohibited). In each case, once DEM decided to change the possession limit, the agency filed the change, in the form of an amendment to the regulation, with the Secretary of State and submitted a press release to the Providence Journal one day prior to the date the amendment went into effect. This is the only notice that commercial fisherman were given concerning the changes in the possession limits.
Defendants are commercial fisherman in Rhode Island affected by these DEM changes.
Between July and September, 1999, Defendants were successful in catching several thousand pounds of summer flounder. Unbeknown to Defendants, DEM had changed the possession limits eight times during the summer. Without realizing they were doing so, Defendants possessed more flounder than the regulations permitted on many different dates during the applicable time period. Defendants were also unaware that they were required by Reg. 7.7.5-1c to notify law enforcement when they would be offloading flounder in excess of the maximum allowable possession limits.
Defendants' fishing expeditions came to a close when a former bookkeeper turned them over to law enforcement for possessing overages of flounder. All three Defendants were charged with multiple violations of possessing overages of flounder and failure to notify law enforcement prior to offloading the flounder from their boats. The Defendants were issued summonses to appear in Rhode Island District Court pursuant to § 20-1-12(c) and upon Defendants' motion under Dist. R.Crim.P. 23, the case was transferred to Superior Court.
ANALYSIS
Validity of Summer Flounder Possession Limit Amendments (Reg. 7.7.2-2)
The first issue addressed by the Court is whether DEM's procedure for amending its summer flounder possession limits comports with the requirements of the Administrative
Procedures Act (APA). Defendants argue that DEM violated the act in implementing each and every amendment because it did not follow the APA requirement that agencies precede amending its regulations with thirty days' published notice and an opportunity for a hearing. The State argues that it was not required to hold a new hearing and provide separate notice for each amendment. The State bases its argument on a DEM regulation, promulgated in 1992, which purports to give DEM authority to amend its regulations without a separate hearing and notice. In the alternative, the State argues that the hearing and notice provided for the 1992 DEM regulation is sufficient for each amendment thereafter.
Administrative Procedures Act Requirements for Amending Regulations The APA grants agencies the authority to adopt, amend, or repeal rules within the agency's jurisdiction. G.L. 1956 § 42-35-3. As such, DEM's authority to amend summer flounder possession limits is undisputed. The APA also specifies, however, that a certain procedure must be followed when an agency chooses to amend its regulations unless the regulation is needed for an emergency. In emergency situations, a different procedure is followed, but this situation is not implicated in this case. The regular procedure for amending, adopting and repealing rules requires an agency to give at least thirty (30) days' published notice prior to its action and to provide all persons a reasonable opportunity to be heard on the proposed action. Id.[4] Important policy reasons underlie the requirements of providing notice and an opportunity to be heard. Notice improves the quality of rule-making by insuring that agency regulations will be tested by exposure to public comment. Notice and the opportunity to be heard are also important because they are essential components of fairness to affected parties. As well, these requirements give parties an opportunity to develop evidence in the record to support their objections to the rule, thereby enhancing the quality of judicial review. 2 Am. Jur 2d
Administrative Law § 166 (1994). The notice requirement serves an even more crucial role in cases such as the present where changes are constantly being made to the regulations, and where failure to adhere to those regulations can result in criminal penalties and impinge upon fishermen's ability to engage in their livelihood.
While the APA speaks generally to the rulemaking of all agencies, § 20-1-12 speaks specifically to the Fish and Wildlife division of DEM. This section, entitled "Fixing of seasons and bag limits" gives specific power to DEM to fix possession limits on fish. Section (d) specifies that regulations under this statutory provision "shall be adopted only after the holding of a public hearing subject to the provisions of the Administrative Procedures Act, chapter 35 of title 42." The legislature's intent is therefore very clear: before any regulations can be adopted or amended, the agency must provide notice and a hearing.
DEM's Procedures for Amending Summer Flounder Possession Limits During the summer of 1999, DEM amended its summer flounder possession limit regulation eight times, none of which constituted an emergency situation. In what appears to be a half-hearted attempt to satisfy the notice requirement for some of the amendments, the State has provided the Court copies of three press releases notifying the public. These press releases only exist for three of the amendments, however, and appear to have been published the day before the amended possession limit was to go into effect. Not once in 1999 did DEM give thirty days' prior notice. Additionally, the State has produced no evidence that DEM provided a hearing or any other opportunity for affected persons to be heard on the issue of possession limits prior to each amendment's implementation date. DEM's procedure for amending its possession limit regulation, therefore, did not provide the notice and opportunity for a hearing procedure required by the APA, or by DEM's governing statute, thus prejudicing substantial due process rights of the Defendants.
State's Argument that DEM Followed APA Procedure Alternatively, the Rhode Island Office of the Attorney General (State) argues that DEM did in fact abide by the APA in amending these regulations. The State's argument is that in 1992,
DEM promulgated Reg. 7.7.2-2 which purported to allow the director of Fish and Wildlife (under authority of DEM) to amend summer flounder possession limits at will by merely filing an amendment with the Secretary of State, which is already required under the APA, and issuing a press release at some unspecified point in time.[5] This regulation was adopted using proper APA procedure by providing notice and a hearing prior to implementation. Because DEM followed proper APA procedure in enacting this 1992 amendment, the State asserts, it must be a valid and effective regulation delineating the procedure DEM has to follow in amending its regulations.
Therefore, since DEM conformed itself to 7.7.2-2's requirements when it filed the 1999 amendments with the Secretary of State and issued a press release, the State maintains DEM followed proper APA procedure in effectuating the 1999 amendments. In the alternative, the State seems to suggest that the notice and hearing provided prior to the implementation of the 1992 regulation suffice to meet the notice and hearing requirement for amendments thereto.
DEM Reg. 7.7.2-2 Violates APA Requirements The process of agency rulemaking is initiated when the legislature delegates to an administrative agency power to make rules and regulations for the purpose of implementing a statute. Since the agencies themselves are creations of the legislature, they have no inherent power in and of themselves to promulgate regulations absent specific or implied grants of statutory authority. Berkshire Cablevision of Rhode Island, Inc., v Burke,488 A.2d 676, 679 (R.I. 1985). When agencies promulgate rules and regulations, they do so with authority that is "limited and defined by the statute conferring the power." 2 Am. Jur 2d Administrative Law § 152. Title 20, Chapter 1 of Rhode Island General Laws gives to the director of DEM this necessary statutory "authority and responsibility over the fish and wildlife of the state and over the fish, lobsters, shellfish, and other biological resources of marine waters of the state." § 20-1-2. To fulfill this directive, the director is "authorized to promulgate, adopt, and enforce any and all rules and regulations deemed necessary to carry out duties and responsibilities under this title," § 20-1-4, but it must do so following the APA-required procedures. § 42-35-3; § 20-1-12(d).
It is unquestionable that DEM understood its responsibility to abide by the APA in enacting regulations and amendments. This fact is evidenced by letters sent from DEM to the Secretary of State upon filing some of the 1999 amendments. In those letters dated 7/15/99, 8/4/99, and 9/15/99, DEM stated that it was amending the regulation governing summer flounder in accordance with the APA.[6] Additionally, the amendment forms themselves, which DEM filed with the Secretary of State, list the APA as DEM's statutory authority to implement the amendment. However, even after acknowledging that it was subject to the APA's authority,
DEM chose to act in contravention of its governing statute and the APA.
As previously stated, the law is clear that agencies may not promulgate regulations without statutory authority to do so. Berkshire Cablevision of Rhode Island, Inc., 488 A.2d 676.
Nowhere, either expressly or impliedly, has the legislature given DEM authority to promulgate regulations that contradict clear requirements of the APA. In fact, even in a portion of DEM's enabling act giving the agency power to fix possession limits, § 20-1-12(d), the legislature clearly stated that regulations under this statutory provision "shall be adopted only after the holding of a public hearing subject to the provisions of the Administrative Procedures Act, chapter 35 of title 42." DEM acted completely ultra vires in promulgating 7.7.2-2 by purporting to give itself power to amend its own rules in a manner contradictory to that required by the APA and its enabling legislation. It had neither express nor implied statutory authority to do so. DEM purports to rely upon a regulation that is completely invalid substantively, albeit enacted pursuant to proper procedures. Accepting the State's argument on this point would be tantamount to concluding any bill presented to both bodies in a legislature and signed into law by an executive, whether it be the United States President, or the state Governor, is valid, constitutionally and statutorily — regardless of its substance — simply because it was passed in a procedurally proper manner. The logical terminus of such an approach would extinguish the judiciary's role of interpreting the validity and constitutionality of laws. The Court rejects the State's argument and finds that DEM acted far in excess of its delegated scope of authority when it enacted 7.7.2-2.
The State's argument that the hearing and notice provided prior to 7.7.2-2's promulgation in 1992 satisfy the hearing and notice required for each amendment is completely without merit.
Section 40-32-5 states in unmistakable language that the hearing and notice requirements apply to "the adoption, amendment or repeal" of an agency regulation. The most basic and well-settled rule of statutory construction states that "where `the language of a statute is clear and unambiguous, the statute may not be construed or extended but must be applied literally.'" State v. Alejo, 723 A.2d 762, 764 (R.I. 1999) (quoting Pizza Hut of America, Inc. v. Pastore, 519 A.2d 592 (R.I. 1987)). The literal language of the statute requires notice and an opportunity to be heard for each amendment. If the legislature intended for an agency to provide notice and an opportunity to be heard only when the agency planned to adopt a new regulation, it could have done so. Clearly, however, it did not. Nowhere in the wording of § 42-35-3 is there any suggestion of ambiguity or lack of clear legislative intent. The State's attempt to bootstrap the hearing and notice provided for 7.7.2-2 as justification for every subsequent amendment is erroneous and in violation of § 42-35-3.
For these reasons, this Court finds that Reg. 7.7.2.2, which purports to give DEM the right to amend summer flounder limits at will, violates APA § 40-32-5 and DEM's enabling legislation found in § 20-1-12(d). Additionally, this Court finds that all amendments of summer flounder possession limits made pursuant to Reg. 7.7.2.2 are invalid, as they were created in reliance upon an invalid regulation.
Validity of Requirement to Notify Law Enforcement Prior to Offloading Certain Amounts of Summer Flounder (Reg. 7.7.5-1c)
Defendants argue that this provision was also published without proper notice and opportunity for a hearing in violation of the APA. Additionally, Defendants argue that a conviction for violating this regulation would deny them due process because the regulation punishes wholly passive conduct. Finally, Defendants argue that the provision violates their constitutional privilege against compelled self-incrimination.
The State does not address Defendants' first argument and scantily touches upon some of Defendants' other arguments. Without addressing Defendants' due process argument regarding the punishment of wholly passive conduct, the State argues that Defendant's allegation that DEM unlawfully delegated its policing powers is meritless because the purpose of the requirement is to satisfy obligations under the federal government guidelines. Addressing the compelled self-incrimination argument, the State contends that as long as fishermen abide by the possession limits in effect, they will not be required to incriminate themselves.
Reg. 7.7.5-1c requires every licensed person in charge of a commercial vessel carrying more than 200 pounds or the maximum allowable possession amount of flounder to call the Rhode Island Office of Law Enforcement (RIOLE) at least one hour prior and not more than six hours prior to offloading their flounder. This provision, according to the State, was created to ensure compliance with possession limits. Additionally, DEM already has at its disposal, by virtue of its delegated powers from the legislature, several mechanisms it may use to enforce the possession limits. G.L. § 20-1-20 allows the director of DEM to require fishermen to submit reports of their catch for purposes of carrying out his duties of enforcement.
Additionally, § 20-1-10 allows DEM to patrol the coastline and requires every person operating a boat, upon command of such a patrol, to recognize DEM's presence and to heave-to. As well, § 20-1-8(a)(7)(i) gives DEM the right to board any boat believed to be engaged in fishing and allows its agents to examine the operation. Defendants were charged with violating Reg. 7.7.5-1c because they failed to notify law enforcement prior to offloading flounder from their boats on the days they possessed more than 200 pounds or the maximum possession limit.
Reg 7.7.5-1c violates APA requirements The previous section details the APA requirements of notice and an opportunity to be heard which an agency must comply with in promulgating rules and regulations. See G.L 1956 § 42-35-5. Defendants allege DEM failed to provide the requisite notice prior to this regulation's implementation as well. The State completely ignored the issue in its reply brief and has furnished no evidence contradicting Defendants' assertion. The Court therefore finds that Reg. 7.7.5-1c is invalid on the ground that it was enacted without proper notice and an opportunity for hearing.
7.7.5-1c Violates Due Process Even assuming 7.7.5-1c was promulgated following proper notice and an opportunity for hearing, the regulation violates due process because it punishes wholly passive conduct without proper notice. In this case, even if Defendants were put on notice of the regulation, they could not have fully complied with it without proper notice of the maximum possession limits.
Generally speaking, ignorance of the law is no excuse. Since this regulation was in effect during the summer of 1999, the general rule would require Defendants to abide by it or risk prosecution. An exception to the general rule exists, however. In Lambert v. California, 355 U.S. 225
(1957), the United States Supreme Court recognized that in rare instances, actual knowledge of the law's requirements is a precondition to criminal liability. In such a case, "a defendant seeking to avoid prosecution of the law on the ground of ignorance of the law must satisfy two requirements. First his conduct must have been `wholly passive.' Second, there must be an absence of `circumstances that should alert the doer to the consequences of his deed.'" United States v. Denis,297 F.3d 25, 29 (1st Cir. 2002) (quoting Lambert v. California, 355 U.S. at 228). The Lambert Court addressed a city ordinance which criminally penalized felons who remained in Los Angeles more than five days without registering with the police.
Id. at 226-227. The Court held that a conviction under the registration provision violated due process when the defendant had no notice that remaining in the city might lead to criminal prosecution. See Id. at 228-30. Lambert's criminal conduct was "wholly passive — mere failure to register. It was unlike the commission of acts, or the failure to act under circumstances that should alert the doer to the consequences of his deed." Id. at 228-29.
Applying the two-pronged Lambert test, this Court finds that the regulation at issue violates due process in the same manner as the Lambert regulation. First, Defendants' conduct was wholly passive in that their criminal conduct was in "doing nothing." The fishermen failed to notify law enforcement of a condition they had no reason to know was unlawful — just as the defendant in Lambert failed to notify law enforcement of her presence in the city. Without doing anything, those who possessed fish could be punished for having the fish lawfully on their boats merely because they failed to call law enforcement.
The second prong of Lambert requires an "absence of `circumstances that should alert the doer to the consequences of his deed.'" United States v. Denis, 297 F.3d at 29 (quoting Lambert v. California, 355 U.S. at 228). This prong is easily satisfied. First of all, as stated earlier, DEM did not abide by proper notice and hearing requirements in promulgating the maximum possession limits. The regulation requires fishermen to call if they are over 200 pounds or the maximum possession limit. Since DEM changed the maximum limit eight times during the course of 1999, there was no way for Defendants to know whether they possessed over the maximum amount or whether that amount was 200 pounds.
Secondly, it is axiomatic that Defendants would have been aware of the requirement to call law enforcement if they were over the legal limit. Enforcing the regulation would be analogous to upholding a law requiring a drunk driver to call law enforcement before he drives, a trucker to call before he drives with more weight in his truck than is allowed, or the fast driver to let police know he will be speeding. Such laws simply do not exist and that
Defendants should have been aware of such a law relating to their particular occupation is tenuous speculation at best.
Defendants had every right to believe that as long as they had the proper permits and stayed within the possession limits (those they knew of), they were not violating the law. Their failure to call law enforcement was wholly passive conduct which could be punished criminally despite the fact that they had no knowledge of the requirement. Like Lambert, the present case "highlights the limited circumstances in which the State's reliance on a presumption of knowledge strains the constitutional requirement that the liberty and property of persons be dealt with fairly and rationally by the State. The State's power to impose sanctions on individuals is to be tested in part against the rationality of the proposition that those individuals were or could have been aware of their legal obligations." Texaco, Inc. v. Short,454 U.S. 516, 547 (1982) (Brennan, J., dissenting). Defendants were not subject to a set of circumstances that should have alerted them to the consequences of their deed. For the State to enforce this regulation violates due process and for that reason, this Court declares DEM Reg. 7.7.5-1c invalid. 7.7.5-1c Violates the Constitutional Privilege against Compelled Self-Incrimination Reg. 7.7.5-1c requires fishermen to call law enforcement prior to offloading their flounder when they are over the maximum possession amount or when they possess more than 200 pounds. Defendants argue that doing so compels them to incriminate themselves should they call when over the permitted amount. The State argues that this does not compel self-incrimination as long as fishermen stay within the allowable possession amount. Since this Court has already determined that it is virtually impossible for a fisherman to know what the DEM-imposed limit is on any given day, the State's argument is not compelling.
The real issue is whether potential self-incrimination, which is clearly contemplated by the statute (since fisherman are required to call if over the maximum amount), equates to compelled self-incrimination in violation of section thirteen of the Rhode Island Constitution.
This section, entitled "Self-crimination," states that "no person in a court of common law shall be compelled to give self-criminating evidence." R.I. CONST. art. I § 13. It would appear at first glance that this privilege extends only to in-court compelled testimony. The Rhode Island
Supreme Court seemed to extend the privilege, however, to include "disclosures that would support a conviction" and "disclosures that would constitute a link in the chain of evidence needed to initiate a prosecution." Dennis J. Robert II, Attorney General et al v. Communications Investment Club of Woonsocket et al, 431 A.2d 1206, 1028 (R.I. 1981) (citing Hummell v. Superior Court, 211 A.2d 272, 274 (R.I. 1965) (citing Malloy v. Hogan, 378 U.S. 1, 11 (1964)). Certainly, requiring fisherman to call and turn themselves in to DEM when they possess more flounder than the regulations permit is a "disclosure that would support a conviction." Required disclosures that could lead to potential prosecution do not always violate the privilege against self-incrimination, however. As Justice Burger stated in California v. Byers, 402 U.S. 424, 427-428 (1957),
 "An organized society imposes many burdens on its constituents. It commands the filing of tax returns for income; it requires producers and distributors of consumer goods to file informational reports on the manufacturing process and the content of products, on the wages, hours, and working conditions of employees. Those who borrow money on the public market or issue securities for sale to the public must file various information reports; industries must report periodically the volume and content of pollutants discharged into our waters and atmosphere. . . In each of these situations there is some possibility of prosecution — often a very real one — for criminal offenses disclosed by or deriving from the information that the law compels a person to supply. Information revealed by these reports could well be "a link in the chain" of evidence leading to prosecution and conviction. But under our holdings the mere possibility of incrimination is insufficient . . .
Id. The problem with this regulation is that it requires far more than a possibility of incrimination. Indeed, it targets primarily those fishermen who violate the possession limit regulation rather than all fishermen who engage in catching flounder.
This regulation is arguably analogous to the reporting requirement in G.L (1956) § 31-26-3 at issue in State v. Smyth, 397 A.2d 497
(1979), which required all persons involved in a motor vehicle accident to render to law enforcement certain information involving the accident. The defendant in that case argued that the statute compelled self-incrimination if he could be charged criminally with hit-and-run as a result of the information he provided police.
The Rhode Island Supreme Court rejected defendant's argument on the basis that the statute merely required those who were involved in the accident, regardless of fault, to provide information concerning the circumstances of the collision. The Court, relying on its reasoning from State v. Lemme, 244 A.2d 585, 590 (R.I. 1968) stated, "[w]e do not perceive that the required statement calls for information so detailed as to suggest, let alone admit, that the collision was the result of conduct amounting to a misdemeanor." State v. Smyth, 397 A.2d at 500 (quoting State v. Lemme 244 A.2d at 590). The regulation at issue in this case is distinguishable from the statute at issue in Smyth. Although both provisions create a potential for self-incrimination, the hit-and-run statute requires everyone involved in an accident where personal injuries result to call law enforcement and provide certain information. This requirement does not limit itself only to those who are responsible, who were negligent, who were intentional, or who were completely innocent. Everyone is required to call, regardless of their degree of fault or participation. The Court considered that statute "`essentially regulatory . . . directed at all automobile drivers.'" Id. at 499 (citing California v. Byers, 402 U.S. 424 (1971) (upholding a similar state statute as non-violative of the Fifth Amendment). The regulation at issue in this case, however, does not apply to all fishermen catching flounder. It applies only to those who catch over 200 pounds and those who catch amounts over the legal limit. As well, the information that the fishermen must provide, unlike the information required under the statute in Smyth, is certainly information "so detailed as to . . . admit that . . . [their amount of fish over the legal possession limit] . . . was the result of conduct amounting to a misdemeanor," which conduct is, of course, that of possessing more flounder than the regulations permit.
Forcing fishermen to call law enforcement prior to offloading their flounder when they possess amounts in excess of the permitted limit is a use and abuse of "legal process to force from the lips of the . . . individual the evidence necessary to convict him." Spevack v. Klein,385 U.S. 511, 516 (1967) (quoting United States v. White, 322 U.S. 694, 698 (1944). This is not a case analogous to regulatory stops, patrols, or general reporting requirements where checks are instituted for everyone or are at least random. This requirement focuses primarily on those who exceed the permitted limits and it requires them to report themselves. There is no question that this requirement potentially constitutes, if not all the evidence, at least "a link in the chain of evidence needed to initiate a prosecution" for those who possess overage amounts. For this reason, Reg. 7.7.5-1c is unconstitutional.
 CONCLUSION
DEM, in its zeal to enforce its delegated powers, has done so by improper means. Reg. 7.7.2-2, which purports to give DEM the power to amend its summer flounder possession limits upon filing the amendment with the Secretary of State and submitting a press release, violates the APA requirements of providing notice and a hearing prior to amending its regulations. Each and every amendment created pursuant to such procedure therefore, violates the APA and is invalid.
Additionally, Reg. 7.7.5-1c, requiring fishermen to call law enforcement prior to offloading certain amounts of flounder, also violates the APA as there is no evidence that it was promulgated pursuant to proper procedures. This regulation also violates due process because it punishes wholly passive conduct of which Defendants had no reasonable notice.
Furthermore, this regulation also violates Defendants' state constitutional right against compelled self-incrimination because it forces them to provide the government with incriminating evidence that could be used against them.
Pursuant to the above analyses, this Court holds that both regulations at issue — DEM
Regulations 7.7.2-2 (under Section 7.7.2 entitled "Summer flounder Trip Limits (possession limits)) and Regulation 7.7.5-1c (under Section 7.7.5-1 entitled "Prohibition on the transfer of Summer flounder") — are invalid. Additionally, this Court also finds that the amendments of summer flounder possession limits are invalid. Accordingly, the Court grants Defendants' motion to dismiss all the charges against them.
[1] Both of these regulations may be found on DEM's website at www.state.ri.us/DEM. The specific page site is http://www.state.ri.us/DEM/pubs/regs/regs/fishwild/rimf7.pdf (pages 8-9)
[2] At the time these events in controversy occurred, RIMFC had regulatory jurisdiction to promulgate rules governing the poundage of flounder that could be possessed, and RIMFC did in fact promulgate the rules at issue. However, RIMFC's status has since changed. Currently, only DEM has the power to promulgate such rules and regulations with RIMFC acting in a merely advisory capacity. See G.L. § 20-3-2. Therefore, for purposes of this decision, the Court will refer solely to DEM, since it is currently enabled with regulatory jurisdiction in this area. 
[3] Taken from DEM Regulation 7.7.2-2 as amended and filed with the Rhode Island Secretary of State from May through September 1999; The possession limits were as follows:
a. May 1:300 pounds
b. May 26: prohibited
c. June 1:100 pounds
d. July 16:50 pounds
e. August 5: prohibited
f. September 1:300 pounds
g. September 16:100 pounds
h. September 30: prohibited 
[4] § 42-35-3. Procedures for adoption of rules
(a) Prior to the adoption, amendment, or repeal of any rule the agency shall:
(1) Give at least thirty (30) days notice of its intended action. The notice shall include a statement of either the terms or substance of the intended action or a description of the subjects and issues involved, and of the time when, the place where, and the manner in which interested persons may present their views thereon . . .
(2) Afford all interested persons reasonable opportunity to submit data, views, or arguments, orally or in writing . . . . . . (sections omitted) . . .
[5] DEM Reg. 7.7.2-2 states: "Fish and Wildlife will decide whether the possession limit should be decreased or increased. Fish and Wildlife will file a notice with the Secretary of State's Office if the rate is changed and publish a news release announcing the change in a newspaper of daily circulation throughout the State."
[6] State's Exhibits 4-6.